UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cr-20311-CMA

UNITED STATES OF AMERICA,

v.

PHILLIP JOSHUA FULTZ,

    Defendant.

                                         /

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED BY THE EXECUTION OF JANUARY 1, 2025, SEARCH WARRANT.

This cause is before the Court on Defendant, Phillip Joshua Fultz's ("Defendant"), Motion to Suppress Evidence Obtained by the Execution of January 1, 2025, Search Warrant ('the "Motion"). [ECF No. 22]. The Motion was referred to the Undersigned by Chief United States District Judge Cecilia M. Altonaga. [ECF No. 24]. For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion be **DENIED**.

## BACKGROUND

On January 1, 2025, the Defendant was arrested and later charged with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1), possession of a firearm and ammunition by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1), and unlawful possession of a machinegun, in violation of Title 18, United States Code, Section 922(o). [ECF No. 12]. The firearms and ammunition were found during a search of his residence pursuant to a search warrant.

Defendant argues there was no probable cause to issue the search warrant because the search warrant affidavit alleged that "the guns were due to be removed from the Premises on December 31, 2024" but the warrant was not signed by the judge until shortly after midnight on January 1, 2025. [ECF No. 22 at 5]. Consequently, he maintains there was no probable cause to issue the warrant at the time the warrant was submitted to the judge.

After conducting an evidentiary hearing and reviewing the record it is clear that probable cause supported the issuance of the warrant at the time it was issued and, even without a warrant the officers could have legally searched the premises based upon the exigent circumstances created by the impending murder for hire.

A. **Search of the Premises**

On December 31, 2024, an individual ("Individual 1") was taken into custody by the Miramar Police Department after he was arrested for driving a stolen vehicle and in possession of an assault rifle. [ECF No. 22-1 at 4–5]. At the Miramar Police Station, Individual 1 requested to speak to City of Miami Gang Unit and Miami Gardens Homicide Unit about a gang shooting in Miami Gardens that had occurred a week before on December 24, 2024. [*Id.*].

After being read his rights Individual 1 told City of Miami Detective Jerry Paret that he was a member of Gary Gang/A4T—one of the gangs involved in the December 24 shooting. [*Id.* at 5]. Further, Individual 1 explained the stolen vehicle he was driving, and the assault rifle were to be used in a murder for hire set to occur on January 1, 2025. [*Id.*]. Individual 1 told Detective Paret that several Gary Gang/A4T's members, including himself, were to meet at Defendant's residence at 1630 NW 4TH Avenue, Apt 9F, Miami ('the "Premises") that same day, at 11:45 p.m. to pick up over ten firearms and machine guns to be used to commit the murder for hire. [*Id.*].

Individual 1 stated Defendant lived at the Premises and claimed Defendant could not leave the Premises because he had an ankle monitor. [*Id.*].

After receiving the information Detective Paret confirmed that Defendant's registered Florida driver license address was the Premises and Defendant's ankle monitor was "actively pinging" at the Premises. [*Id.*]. Further, Detective Paret's record check revealed that Defendant was a convicted felon. [*Id.* at 5–6]. Detective Paret's also sent Officer Cepero to the Premises, who observed Defendant exit and enter the Premises. [*Id.* at 6].

Thereafter, on January 1, 2025, at approximately 12:30 a.m., Detective Paret submitted an affidavit describing the above and a search warrant application for the Premises to "the Honorable Mindy S. Glazer, Eleventh Judicial Circuit Court for the State of Florida." [ECF No. 32 at 1]. An amended search warrant application was then submitted to Judge Glazer at around 12:40 a.m.[1] [*Id.*]. Judge Glazer issued the warrant at approximately 12:49 a.m. [*Id.*]. The warrant authorized law enforcement to search and seize:

> 1. Firearms, projectiles, ammunition, holsters, or items necessary to operate firearms. Including, but not limited to, BB/pellet guns, airsoft guns, replica toy guns, and accessories relating to firearms.
> 2. Any and all physical evidence including, but not limited to, latent/fingerprints, and/or potential human tissue and/or bodily fluids containing DNA.
> 3. Cellular phones and any other electronic devices/ankle monitors capable of accessing Global Positioning Systems.
> 4. Records indicating the owner or the occupant of "The Premises," and/or documents and/or cards, including credit cards.
> 5. Gang paraphernalia, including but not limited to paraphernalia representing Gary Gang/A4T
> 6. CCTV recording systems, RING cameras, or DVRs.

[ECF No. 22-1 at 8].

---

[1] At the hearing, Detective Paret testified that an amended search warrant application was sent to Judge Glazer because one of the FBI agent's name was misspelled. [Hearing Transcript, 60:13–15].

The search warrant was executed around 4:00 a.m. and law enforcement seized six firearms:

> (1) a Taurus G2C firearm; (2) a Canik TP9 firearm, loaded with 15 live rounds of ammunition; (3) a Glock 17C firearm; (4) an AM-15 firearm, which was a short barrel rifle; (5) a Glock 17 firearm, which was equipped with a machinegun conversion device ("MCD")3 and was loaded with 20 live rounds of ammunition in a 30-round magazine; and (6) a Glock 17 firearm, equipped with a MCD.

[ECF No. 32 at 7]. During the search several other items were recovered such as Defendant's Florida driver's license, a Glock firearm magazine, an assault rifle magazine with twenty-six (26) live rounds of ammunition, a rifle magazine with 20 live rounds of ammunition, and one live 9mm round of ammunition. [*Id.* at 7–8].

B. **Summary of the Testimony**

Detective Paret testified at the evidentiary hearing to his experience in law enforcement, his knowledge about recent gang activity in Miami Dade County, the law enforcement personnel available on December 31, 2024, his interview with Individual 1, the facts contained in the affidavit, and the events leading up to submission of the warrant to Judge Glazer. He stated that he arrived at the Miramar Police Station where Individual 1 was in custody at around 8:30 p.m. [Hearing Transcript, 26:13–15]. Once there, Miramar officers explained to him that Individual 1 was part of Gary Gang/A4T—a gang Detective Paret had been investigating since January of 2023. [*Id.* at 26:17–27:7]. Detective Paret further testified that a shooting where a Gary Gang member was shot in the head by a rival gang had occurred on December 24, 2024. [*Id.* at 27:9–28:4].

Regarding his interview with Individual 1, Detective Paret explained that Individual 1 gave him information about previous homicides where Gary Gang was involved and about the murder for hire set to occur on New Year's Day. [*Id.* at 28:13–29:13]. Individual 1 informed Detective Paret of facts not publicly known such as the motivation to kill the victims, the Gary Gang

4

members involved in the homicide and their nicknames, and showed the detective several text messages between himself and other gang members. [*Id.* at 30:1–9]. Further, Individual 1 confirmed his role as "the spotter" for the previous murders and the future murder for hire. [*Id.* at 31:1–8]. Individual 1 indicated to Detective Paret that Defendant, a convicted felon on house arrest, was storing firearms for the gang, which were to be used in the planned murder. [*Id.* at 31:15–32:15]. Individual 1 also mentioned that the firearms included machine guns, one of which was used in the December 24 murder. [*Id.* at 32:16–19]. Individual 1 explained that three vehicles were to be used in the murder for hire—the one Individual 1 was driving when stopped and two others. [*Id.* at 31:22–25]. The perpetrators were to be paid $200,000 for killing the intended victims. [*Id.* at 38:10–13]. Detective Paret testified he confirmed the information provided by Individual 1, including Defendant's convicted felon status and location. [*Id.* at 36:11–37:6]. Lastly, concerning the law enforcement personnel, Detective Paret described how difficult it was to gather officers to assist him with the investigation and search warrant execution on New Year's Eve and the early morning hours of New Year's Day. [*Id.* at 24:22–25:4; 37:12–38:10; 41:12–42:6; 48:9–25; 51:25–52:1].

## LEGAL STANDARD

### A. Probable Cause

The Fourth Amendment protects individuals against unreasonable searches and seizures and provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kapordelis*,

569 F.3d 1291, 1310 (11th Cir. 2009) (internal quotations omitted). The Supreme Court has instructed that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

When determining whether a search warrant was supported by probable cause, the reviewing court's inquiry is limited to whether the issuing judge "had a substantial basis for concluding that probable cause existed." *Id.* at 214. In making this inquiry, the reviewing court "must consider only that information brought to the attention of the issuing judge." *United States v. Schulz*, 486 F. App'x 838, 842 (11th Cir. 2012) (citations omitted). Importantly, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote a high level of deference traditionally given to [judges] in their probable cause determinations." *United States v. Hatcher*, 300 F. App'x 659, 663 (11th Cir. 2008) (quoting *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994)). Indeed, the issuing judge's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (internal quotations omitted). "However, the information supporting the Government's application for a warrant must show that probable cause exists at the time the warrant issues." *United States v. Kirkham*, 719 F. App'x 994, 994–95 (11th Cir. 2018) (internal quotations omitted).

### B. Good Faith Exception

*United States v. Leon,* 468 U.S. 897 (1984), stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon*

good faith exception applies in all but four limited sets of circumstances. *Id.* at 923. The four sets of circumstances are:

> (1) [W]here the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role . . .; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal quotations and citations omitted). The *Leon* good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." 468 U.S. at 926. The purpose of the exclusionary rule is to deter unlawful police misconduct. Therefore, when officers engage in "objectively reasonable law enforcement activity" and have acted in good faith when obtaining a search warrant, the *Leon* good faith exception applies. *Id.* at 919–20.

    C. **Exigent Circumstances**

The warrant requirement is subject to exceptions. "One well-recognized exception . . . applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, 569 U.S. 141, 148–49 (2013) (internal quotations omitted). "An exigency exists if the facts . . . would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *United States v. Bradley*, 644 F.3d 1213, 1262 (11th Cir. 2011) (internal quotations omitted). "[E]mergency situations involving endangerment to life fall squarely within the exigent circumstances exception." *United States v. Holloway*, 290 F.3d 1331, 1337

(11th Cir. 2002). The Eleventh Circuit explained that "[i]t is difficult to imagine a scenario in which immediate police action is more justified than when a human life hangs in the balance. Although the Fourth Amendment protects the sanctity of the home, its proscription against warrantless searches must give way to the sanctity of human life." *Id.* "But a mere suspicion that an exigency may exist is not enough to justify a warrantless search and seizure; the court must be able to identify specific facts that constitute an exigency." *Bradley*, 644 F.3d at 1262 (citations omitted).

## **DISCUSSION**

Defendant's arguments in his motion to suppress all focus on the fact that based on Detective Paret's affidavit "the firearms and guns were due to be removed from the Premises on December 31, 2024," but "the request for, and issuance of, the Warrant was on January 1, 2025." [*Id.*]. He argues that "probable cause did not exist at the time that the officer testified in an affidavit submitted to the judge for the issuance of a warrant." [ECF No. 22 at 5]. He maintains that the good faith exception to the exclusionary rule does not apply because "[t]he awareness of the officer of the absence of probable cause is unambiguous because the lack of probable cause is apparent on the face of the probable cause affidavit." [*Id.*].

On the other hand, the Government raises three main arguments against suppression. First, probable cause existed at the time the warrant was issued. [ECF No. 32 at 9–14]. Specifically, neither the staleness nor the probable cause analysis are as rigid as Defendant argues and "[t]he fact that this particular search warrant was focused on a seemingly ongoing and future crime—one that posed an imminent threat to another's life—and was submitted to the judge within one hour of the potential meetup time, does not extinguish the probable cause to search for evidence of that crime." [*Id.* at 11]. Additionally, the Government argues that Individual 1 was a reliable source of

8

information because he was not an anonymous source and "had first-hand information about the planned murder for hire that was going to use the firearms being stored at the [Premises]." [*Id.* at 13]. The Government argues in support of a probable cause finding that Detective Paret verified the information provided by Individual 1. [*Id.* at 13–14].

Second, the Government argues that even if this Court finds no probable cause existed at the time the warrant was issued, suppression is not warranted because the good faith exception to the exclusionary rule applies. [ECF No. 32 at 14–16]. Lastly, the Government argues under these circumstances exigent circumstances would support a warrantless search of the Premises. [*Id.* at 16–18].

As an initial matter, the Court has weighed the testimony of the Government's primary witness Detective Paret. The Court has taken into account the consistencies in the testimony, and his demeanor on the witness stand. The Court finds Detective Paret to be a credible witness and accepts his testimony as to what transpired on December 31, 2024, and January 1, 2025. Importantly, Detective Paret explained the steps he took during the investigation to build probable cause to support the search of the Premises.

### A. The Search Warrant Was Supported by Probable Cause at the Time of Issuance and Not Stale

A staleness determination requires "examination of the peculiar facts of each case and courts must consider such factors as the length of time, the nature of the suspected crime of the (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *United States v. Richardson*, No. 11-20265-CR, 2011 WL 1979812, at *3 (S.D. Fla. May 20, 2011), *aff'd*, 518 F. App'x 708 (11th Cir. 2013) (internal quotations omitted). Here, as the Government correctly points out neither the staleness nor the probable cause analysis are so rigid. [ECF No. 32 at 10].

This Court finds that the information contained in Detective Paret's affidavit was not stale and Judge Glazer had a substantial basis for concluding that probable cause existed. First, the Court finds that the length of time between the planned meet-up and the issuance of the warrant was extremely short—only one hour. *See United States v. Barnard*, No. 24-20287-CR, 2025 WL 699477, at *10 (S.D. Fla. Feb. 22, 2025), *report and recommendation adopted*, No. 1:24-CR-20287-KMM-1, 2025 WL 699859 (S.D. Fla. Mar. 5, 2025) (finding that a photograph of a car suspected to be involved in the crime taken on May 3, 2024 did not render the warrant issued on June 24, 2024 stale) ("The Murder for Hire and Stalking plot is a continuing offense that involved organization and planning between the co-conspirators. The black Dodge Ram pick-up truck depicted at Defendant's home seven weeks prior to the assault suggests that Defendant was working with the co-conspirators well before June 23, 2024.").

Second, the nature of the suspected offense supports a finding of probable cause. The search warrant affidavit explained that several gang related shootings had occurred between Gary Gang/A4T and rival gang Bosslife/6TM, with one fatal shooting occurring as recent as one week before Individual 1 was interrogated. [ECF No. 22-1 at 4]. As the Government correctly points out "the search warrant affidavit did not state that the murder for hire was to occur at 11:45 p.m.; rather, it indicated that the meet up was merely another step to take in preparation for the murder that would presumably take place on January 1, 2025." [ECF No. 32 at 10]. A murder for hire is a continuing offense. *See Barnard*, 2025 WL 699477, at *10.

Third, the character of the items sought weighs against a finding of staleness because "a firearm, unlike narcotics, is not a consumable item that, after a period of time, will by its very nature no longer exist." *United States v. Piloto*, No. 12-20710-CR, 2013 WL 12080746, at *10 (S.D. Fla. Feb. 5, 2013), *subsequently aff'd*, 562 F. App'x 907 (11th Cir. 2014). It is important to

10

note that Individual 1 stated that "him and multiple Gary Gang/A4T members [were] supposed to meet at [the Premises] on December 31, 2024, at 11:45 PM to pick up over 10 firearms and Machine Guns [] stored within [t]he Premises." [ECF No. 22-1 at 5]. Notably, Individual 1 did not say *all* the firearms stored at the Premises were going to be picked up at the meet-up; thus, it was reasonable for Judge Glazer to infer that there would be a fair probability that a firearm would be located at the Premises. Judge Glazer could also reasonably infer that gang members might still be on the premises an hour later (since Individual 1 was delayed) or that law enforcement officers could find other evidence of the conspiracy on the premises. In fact, in addition to firearms, the warrant authorized law enforcement to seize physical evidence, including latent fingerprints, gang paraphernalia and "CCTV recording systems, RING cameras or DVRs." [ECF No. 22-1 at 8]. Based on the information obtained from Individual 1, there was a fair probability that evidence of a crime would be found at the residence.

Fourth, the nature of the place to be searched weighs in favor of concluding that the information in Detective Paret's affidavit was not stale since the place to be searched was Defendant's residence. *Piloto,* 2013 WL 12080746, at *11 ("Second, because the place to be searched was Defendant's residence, and because case law makes clear that firearms are often stored at one's residence, the nature of the 'premises to be searched' factor weighs in favor of concluding that the thirteen-month period is insignificant."). Therefore, Defendant's staleness argument is meritless.

To the extent that Defendant's Motion raises issues with Individual 1's reliability, this Court finds that the detective reasonably relied upon the information. Detective Paret had previous knowledge that a gang feud was ongoing in Miami-Dade County. [ECF No. 22-1 at 4]. Individual 1's statements not only implicated himself but also identified the intended victims and the

identities of those involved in the murder for hire set to occur. *See United States v. Salter*, No. 2:22-CR-299-MHT-KFP, 2023 WL 4397679 (M.D. Ala. June 7, 2023). Additionally, Detective Paret took steps to verify the information from Individual 1 regarding Defendant. [ECF No. 22-1 at 5–6].

### B. Even if the Search Warrant Was Deficient, the Good Faith Exception Applies.

Under these circumstances, the good faith principle set forth in *United States v. Leon*, 468 U.S. 897 (1984), counsels against suppression. "[*Leon*] stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *Barnard*, 2025 WL 699477, at *11 (quotations omitted).

Here, Defendant has not alleged any of the four circumstances where the good faith exception would not apply. First, Defendant has not alleged that Judge Glazer, in issuing a warrant, was misled by information in the affidavit that Detective Paret knew was false or would have known was false except for his reckless disregard of the truth. Second, Defendant has not alleged that Judge Glazer wholly abandoned her judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979). Third, Defendant does not allege that the warrant was so facially deficient that the executing officers could not reasonably presume it to be valid. Lastly, as discussed above, Defendant did not sufficiently allege that the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Detective Paret testified to the steps he took to verify the information obtained from Individual 1 regarding his gang affiliation and his knowledge of the gang's activities and investigated Defendant's presence at the residence before applying for the warrant. The

information reasonably pointed to evidence of serious gang-related activity occurring at the residence. Therefore, the good faith exception to the exclusionary rule applies.

### C. Exigent Circumstances Would Justify a Warrantless Search of the Premises

Many factors here support a finding of exigent circumstances supporting even a warrantless search of Defendant's apartment. Courts consider "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises to be entered; [and], (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public." *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987) (citing *Payton v. New York*, 445 U.S. 573 (1980)). Here, Detective Paret testified that despite Individual 1 being arrested, it was his belief—based on his knowledge of the gang—that the murders were still going to occur. [*Id.* at 35:20–36:7]. He then explained that in his experience the members of the gang have access to other vehicles other than the one Individual 1 was going to deliver. [*Id.* at 61:25–62:22]. The facts presented by Individual 1 to Detective Paret would lead a reasonable, experienced agent to believe that exigent circumstances existed. According to Individual 1 the firearms to be picked up at the Premises included handguns, assault rifles, and machine guns—one of the firearms to be picked up had been used in the December 24, 2025, gang related shooting. [*Id.* at 32:10–33:8]. Individual 1 stated there were several switches at the Premises, which Detective Paret explained would convert a firearm into "a very deadly high-capacity machine gun." [*Id.* at 33:9–15]. Detective Paret knew the gang to be violent. [*Id.* at 38:15–21].

While law enforcement acted prudently in obtaining a search warrant for the residence, these facts and Detective Paret's testimony evidenced an imminent threat to human life that would have reasonably justified a warrantless entry. *See Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's, Phillip Joshua Fultz Motion to Suppress Evidence Obtained by the Execution of January 1, 2025, Search Warrant [ECF No. 22] be **DENIED**. Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 27th day of October, 2025.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **Chief United States District Judge Cecilia M. Altonaga;**

**All Counsel of Record**